# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| AKECHETA MORNINGSTAR, | ) |
| Plaintiff, | ) ) ) |
| v. | ) NO. 3:24-cv-01104 |
| LIGHTENING SOURCE, LLC, et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff Akecheta Morningstar, a resident of Hinds County, Mississippi, filed a pro se Complaint under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 10, 11, to vacate an arbitrator's decision in favor of Defendants Lightening Source, LLC, Ingram Publishers Services, LLC, Ingram Content Group, LLC, and Ingram Book Group, LLC. (Doc. No. 1). Plaintiff also filed an application for leave to proceed as a pauper and a Motion to Vacate Order of Arbitrator (Doc. No. 5) with a supporting Memorandum (Doc. No. 6).

On February 19, 2025, the Court granted Plaintiff leave to proceed as a pauper and conducted an initial review of the Complaint that ended at the threshold issue of jurisdiction. (Doc. No. 7). Because the Complaint invoked the Court's diversity jurisdiction but did not allege the citizenship of the four Defendants—all limited liability companies as to which the Court must know the citizenship of each member and sub-member in order to be satisfied that jurisdiction is proper under 28 U.S.C. § 1332[1]—Plaintiff was directed to file an Amended Complaint that

---
[1] See Akno 1010 Mkt. St. St. Louis Missouri LLC v. Pourtaghi, 43 F.4th 624, 627 (6th Cir. 2022).

identifies the members and sub-members of each of the Defendant LLCs and alleges the citizenship of each member and sub-member. (Doc. No. 7 at 5).

In response to the Court's Order of February 19, Plaintiff filed an Amended Complaint (Doc. No. 8) that attached the challenged decision of the arbitrator (Doc. No. 8-1) but failed to identify the name and citizenship of each member and sub-member of every LLC Defendant. Accordingly, on April 17, 2025, the Court gave Plaintiff a final chance to amend in order to cure this jurisdictional defect. (Doc. No. 10).

On April 23, 2025, Plaintiff filed a Second Amended Complaint. (Doc. No. 11). The Second Amended Complaint did not merely name the original four LLC Defendants; rather, it named as defendants Ingram Industries and all its subsidiary companies, including the original four and two additional LLC Defendants, Ingram Library Services, LLC and Tennessee Book Company, LLC. (Doc. No. 11). Then, by motion filed on April 29, Plaintiff sought to add Ingram Distribution Management, LLC as a defendant. (Doc. No. 12).

On August 26, 2025, Plaintiff filed a Motion to Amend (Doc. No. 13) and a proposed "2nd Final Amended Complaint." (Doc. No. 13-1). The LLC Defendants named in the proposed amendment are Lightning Source, LLC, Ingram Publisher Services, LLC, Ingram Library Services, LLC, and Tennessee Book Company, LLC. (Doc. No. 13-1 at 2). This amendment will be allowed and is reviewed below as Plaintiff's Third Amended Complaint.

## II. ANALYSIS OF THE THIRD AMENDED COMPLAINT

The Court must conduct an initial review and dismiss the Third Amended Complaint if, among other grounds, it is frivolous or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B); see also Ongori v. Hawkins, No. 16-2781, 2017 WL 6759020, at *1 (6th Cir. Nov. 15, 2017) ("[N]on-prisoners proceeding in forma pauperis are still subject to the

screening requirements of § 1915(e)."). This initial screening includes a review for subject-matter jurisdiction, see Lee v. Money Gram Corp. Off., No. 15-CV-13474, 2016 WL 3524332, at *1 (E.D. Mich. May 23, 2016), report and recommendation adopted, 2016 WL 3476704 (E.D. Mich. June 27, 2016), of which the Court must be assured "at the earliest possible moment to avoid wasting judicial and party resources." Akno, 43 F.4th at 627.

    A. Facts

The Third Amended Complaint alleges that Plaintiff is a "resident citizen" of the state of Mississippi. (Doc. No. 13-1 at 3). It sues a variety of limited liability companies, corporations, and other organizational defendants, all related to one another as parent or subsidiary and forming a "Conglomerate [that] has built a multibillion [dollar] empire by hiding behind these different entities in order to rip persons off they do business with." (Id. at 2–3). It states that, "[i]n the latter part of 2023," the parties agreed to arbitrate Plaintiff's claims of fraud, breach of contract, and copyright infringement. (Id. at 5). Plaintiff believes that the arbitrator deceived him into thinking that she was sympathetic to his claims against Defendants, so that he would agree to keep her "onboard." (Id.). The arbitrator took Defendants' side and awarded them summary judgment though they "did not submit any credible evidence," dismissing Plaintiff's claims even though he "inundated the tribunal with a barrage of discovery to prove [them]." (Id. at 5–6). The arbitrator did so after allowing Plaintiff to add new parties to the arbitration, without giving the newly joined parties an opportunity to be heard. (Id. at 6). Plaintiff alleges that "the Defense and the [American Arbitration] Association both, within an hour of each other sent [him] a coded threatening email, letting [him] know that they support 'White Supremacy[.]'" (Id.). Plaintiff "discussed this with [his] credit card companies and all of [his] money was refunded." (Id.).

3

Plaintiff claims that the Third Amended Complaint "should be accepted in this Court due to (9 U.S.C. 10, 11) AAA, its Arbitrator and Amazon, in collusion, engaged in a pattern of racketeering activity that constitutes a violation of the Racketeer Influenced and Corrupt Organizations Act[.]" (Id. at 6). He claims that, because he "was not able to obtain a fair and unbiased Arbitrator," he "lost the chance to be granted an award." (Id. at 7). As relief, Plaintiff asks the Court "to intervene and take a look at the record and grant him an award commensurate to what this big Conglomerate has stolen," in "a large lump sum payment." (Id.).

B. Subject-Matter Jurisdiction

"In order to challenge an arbitrator's decision under the FAA when there is no pending proceeding in the district court, the moving party must establish subject matter jurisdiction" independent of the FAA. Green v. Ameritech Corp., 200 F.3d 967, 973 (6th Cir. 2000); see Badgerow v. Walters, 596 U.S. 1, 8 (2022) ("A federal court may entertain an action brought under the FAA only if the action has an 'independent jurisdictional basis.'") (citation omitted). Federal subject-matter jurisdiction is restricted to (1) cases that present a question of federal law, and (2) cases between parties of diverse citizenship in which more than $75,000 is at stake. 28 U.S.C. §§ 1331, 1332; Miller v. Bruenger, 949 F.3d 986, 990 (6th Cir. 2020).

The Third Amended Complaint is the first iteration that includes a federal claim, for violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962. (See Doc. No. 13-1 at 6). However, federal-question jurisdiction is not pled; the Third Amended Complaint's jurisdictional statement continues to plead only diversity jurisdiction. (See id. at 5 ("This Court has jurisdiction over this matter because of 28 USC 1332 (Diversity of Citizenship and the amount in controversy is greater than $75,000.")). In any event, the RICO violation alleged in the Third Amended Complaint is based on alleged collusion between "AAA, its Arbitrator[,]

4

and Amazon." (Id. at 6). This "collusion . . . [and] pattern of racketeering activity" (id.) is not alleged to have involved any Defendant directly—neither the American Arbitration Association, the arbitrator, nor Amazon is a defendant in this case. Instead, Defendants' relationship to the collusion is described with only the conclusory accusation that "the way the Arbitrator treated the Plaintiff with disdain, she had to have been on the Defendants' payroll." (Id. at 6–7). This claim is not colorable, but "wholly insubstantial and frivolous," so it may not be used to ground any assertion of federal-question jurisdiction that might be construed from the claim's inclusion in the Third Amended Complaint. Arbaugh v. Y&H Corp., 546 U.S. 500, 513 & n.10 (2006) (quoting Bell v. Hood, 327 U.S. 678, 682–83 (1946)).

Regarding diversity jurisdiction, the same threshold jurisdictional issue continues to haunt Plaintiff's new operative pleading: the citizenship of the LLC Defendants is not alleged by reference to their members and any sub-members. The Third Amended Complaint simply alleges that "Ingram Publisher Services, Ingram Library Services, [and] Tennessee Book Company . . . all have their citizenship listed as Tennessee[.]" (Doc. No. 13-1 at 4). This allegation is insufficient to establish the citizenship of LLC Defendants, and thus insufficient to establish diversity jurisdiction. Akno, 43 F.4th at 627 ("Alleging that an LLC is organized under the laws of a certain state does nothing to establish its citizenship. Rather, LLCs have the citizenships of their members and sub-members.")

However, the Third Amended Complaint expresses Plaintiff's alternative desire "to simply just sue Ingram Industries" if he has not otherwise sufficiently alleged a basis for diversity jurisdiction against the other, subsidiary Defendants. (Doc. No. 13-1 at 3). The Third Amended Complaint, like the Second Amended Complaint before it, names Ingram Industries as a

Defendant. Ingram Industries is not an LLC, but a corporation[2] alleged to have its citizenship in Tennessee. (Id. at 3–4). For purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Ingram Industries (a Tennessee corporation) thus appears to be of diverse citizenship from Plaintiff (a Mississippi resident).

However, if the Court were to construe the Third Amended Complaint as naming only Ingram Industries and dismissing all other Defendants for purposes of establishing diversity jurisdiction, Plaintiff's suit to vacate the arbitrator's decision would be left pending against a Defendant which was not a named party to the arbitration.[3] Even if the suit were nonetheless proper against Ingram Industries through a theory of piercing the corporate veil (see Doc. No. 13-1 at 3 (alleging an alter ego relationship between Ingram Industries and its subsidiaries and seeking "to invoke the legal doctrine of 'piercing the veil'")), jurisdiction over this case would face one final, insurmountable hurdle: the amount in controversy.

To demonstrate that diversity jurisdiction exists, Plaintiff must allege complete diversity of citizenship and that the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332. The Supreme Court's decision in Badgerow v. Walters, 596 U.S. 1 (2022), established the following rule for determining jurisdictional facts in FAA cases: Unlike an action

---

[2] The Court takes judicial notice of the Nashville Area Chamber of Commerce website and its listing for "Ingram Industries Inc." https://nashvillechamber.com/investors/ingram-industries-inc/ (last visited Nov. 26, 2025).

[3] The arbitrator's decision states that the respondents to Plaintiff's claims in arbitration—for breach of contract, fraud, and copyright infringement—were "Lightning Source, LLC; Ingram Content Group; Ingram Spark; Ingram Book Company; Ingram Content Group, LLC; Ingram Publisher Services; Ingram Content Group UK Ltd.; and Ingram Content Group Australia, Pty Ltd." (Doc. No. 8-1 at 1).

to compel arbitration under 9 U.S.C. § 4, where the jurisdictional facts may be found by looking through the federal complaint to the underlying substantive controversy, an action to confirm or to vacate an arbitrator's decision under 9 U.S.C. §§ 9 or 10 cannot utilize the "look-through" approach. Instead, it must establish jurisdictional facts on the face of the federal complaint or motion/petition, independent of the claims in arbitration. Id. After all, "[t]he look-through rule is a highly unusual one: It locates jurisdiction not in the action actually before the court, but in another controversy neither there nor ever meant to be." Id. at 12.

Accordingly, "[i]f a motion (or petition or complaint, however styled) to vacate or confirm an arbitral award does not plead facts that the arbitral award exceeded $75,000, then the Court cannot find that diversity jurisdiction exists." Clark v. Charles Schwab & Co. Inc., No. 1:22-CV-03015-SKC-SBP, 2024 WL 1281451, at *3 (D. Colo. Mar. 26, 2024); see also Tesla Motors, Inc. v. Balan, 134 F.4th 558, 561 (9th Cir. 2025) ("Because a 'look through' approach is prohibited under *Badgerow*, the facts establishing a jurisdictional basis must be present on the face of the application or petition to confirm an arbitration award. Put differently, facts establishing that the amount in controversy exceeds $75,000 must be present on the face of a Section 9 [or 10] petition . . . before a district court can assert diversity jurisdiction over the action.") (citations omitted).

Here, the arbitrator's decision did not result in a financial award to any party, but only in the dismissal of Plaintiff's claims for breach of contract, fraud, and copyright infringement. (See Doc. No. 8-1 at 3). The Third Amended Complaint alleges that "a billion dollar file" from which Defendants could "print [Plaintiff's] work (a Bible)" is at stake here, such that Plaintiff "should be paid a large lump sum payment." (Doc. No. 13-1 at 7). But consideration of that broad reference to the value of the interests Plaintiff sought to vindicate before the arbitrator would require the Court to look through the Third Amended Complaint, to the underlying dispute that the parties

7

submitted to arbitration, to ensure that the stakes rise to the level of the jurisdictional minimum.[4] This the Court cannot do, in light of Badgerow.

The Sixth Circuit has held that "[a] claim for vacation of an arbitral award in the amount of $[75],000 or less is not sufficient for diversity jurisdiction." Ford v. Hamilton Invs., Inc., 29 F.3d 255, 260 (6th Cir. 1994); see also Clark, 2024 WL 1281451, at *3 (requiring action to vacate to "plead facts that the arbitral award exceeded $75,000"). Where, as here, the arbitration did not yield a financial award at all, it appears that the action to vacate the arbitrator's decision has no value independent of the underlying substantive controversy. Balan, 134 F.4th at 561 ("On its face, a petition to [vacate] a zero-dollar award cannot support the amount in controversy requirement."). Because the Court cannot look through to the underlying dispute in this action under 9 U.S.C. § 10, "the amount in controversy, looking solely to the petition to vacate the arbitral award, is zero." Clark, at *4.

In sum, even if diversity of citizenship could be established in this case, the amount-in-controversy requirement of 28 U.S.C. § 1332 is not met on the face of the Third Amended Complaint. The case must therefore be dismissed for lack of subject-matter jurisdiction.

### III. CONCLUSION

As discussed above, Plaintiff's most recent Motion to Amend (Doc. No. 13) is **GRANTED**. The Clerk **SHALL** file Docket Number 13-1 as the next entry on the docket of this case and designate it as "Third Amended Complaint."

---

[4] Plaintiff explicitly invited this look-through in his previous "Motion to Grant Monetary Relief Based Upon Summary Judgment That Was Filed" before the arbitrator. (Doc. No. 9). That Motion—filed before Plaintiff's Second or Third Amended Complaints—asked the Court, "if [it] decide[d] to vacate the above case from AAA, to expedite the closure of this case by proceeding to grant [Plaintiff] monetary relief . . . based upon the overwhelming evidence [he] previously filed with [his] summary judgment that was initially given to AAA." (Id. at 1).

This case is **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction. In light of the dismissal, Plaintiff's remaining pending motions (Doc. Nos. 9 and 12) are **DENIED** as moot.

The Court **CERTIFIES** that any appeal from this dismissal would not be taken in good faith. 28 U.S.C. § 1915(a)(3).

This is the final order in this action. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b)(1).

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE